JOHN A. SCHULTZ, *v.* ARNOT, LINDELL, *et al.,* Respondents.

*Landlord—Tenant—Attornment.*—The attornment of a tenant to a stranger is void, and does not affect the possession of his landlord. (R. C. 1855, p. 1013, § 15.)

*Ejectment—Possession.*—Where no legal title to land is shown, the party showing the prior possession will be held to have the better right.

*Ejectment—Limitations.*—Visible, notorious, continual and actual adverse possession of land for the time limited by the statute, will give title to land to authorize a recovery in ejectment.

*Estoppel.*—If the tenant be induced, by the false representation of a stranger claiming to be the owner of the demised premises, to attorn to him, the landlord defending with the tenant in ejectment will not be estopped from denying the title of such stranger.

### Appeal from St. Louis Land Court.

This was an action of ejectment, brought to the March term, 1857, of the St. Louis Land Court, upon a petition filed February 18, 1857, for a small piece of ground situated in block No. 60 of the city of St. Louis, the same being 29 ft. 9⅝ in. in front on the alley running north and south through the block, by about fifty feet in depth westwardly, and

claimed by the plaintiff as the rear end of his lot fronting on Third street, and by the defendants, Lindell, as the rear end of their lot fronting on Chesnut street. The ground in dispute was not expressly covered by the descriptions in the original deeds of either party. Neither party could show title by deed to this ground.

Thomas and Charles Hempstead were the original owners of the whole quarter block. On May 31, 1821, they conveyed to J. Purdy a lot of fifty feet front on the east side of Third street by a depth of one hundred feet, bounding it on the east by the lot which they " had heretofore bargained to the members of the new theatre, and on which there is a foundation for said theatre;" and February 1, 1823, they conveyed to the managers of the new theatre (Christopher M. Price and Thomas Hempstead) a lot fronting fifty feet on Chesnut street by a depth southwardly of one hundred feet, bounding it on the south by the lot of James J. Purdy. James Loper obtained a judgment, March 13, 1823, against C. M. Price and Thomas Hempstead, who, on the 5th day of June, 1823, quit-claimed this theatre lot, describing it as fifty by *one hundred* feet in depth, to P. & J. G. Lindell, who were the purchasers thereof under execution sale under the judgment aforesaid, and obtained a deed from the sheriff of the same, dated the 10th day of July, 1824, describing the lot as sixty feet on the front by *one hundred and twenty feet* in depth, more or less, being the same lot on which stands the foundation wall of the new theatre.

It appeared in evidence that Purdy had a carpenter's shop on his lot, and as far back as 1832 had actual possession of his lot through to the alley, on which his fence stood, with a gate opening into the alley. In 1835 he sold the northern part of his lot to Fergus Ferguson, bounding it on the east by a lot on which there was a livery stable, and on the south by the remainder of his lot, on which he had his carpenter's shop; and this latter lot he conveys on February 2, 1837, to Hugh O'Brien, being twenty feet on the front on Third street by one hundred feet eastwardly, bounding it on the east by

12—VOL. XXXIII.

a lot once occupied by Thomas and Charles Hempstead, and by them bargained to the members of the old theatre; and on the 15th day of January, 1842, O'Brien conveys the same to the plaintiff by a similar description. In 1836, O'Blenis first took possession of the stable on the old theatre lot under Mrs. Ferguson, the enclosures on Purdy's lot, afterward O'Brien's, and down to the time when plaintiff, Schultz, purchased, actually enclosed the lot as far eastward as to the continuation southwardly of the western line of the old foundation wall of the theatre and stable. O'Brien obtained possession of the lot from Purdy, and Schultz from O'Brien, under their respective deeds, with buildings and enclosures as they stood; that Fergus Ferguson, after his purchase from Purdy, had occupied the stable premises on the theatre lot on Chesnut street under the Lindells until his death, and that in 1836 Robert McO'Blenis came into possession under Mrs. Ferguson, the widow, and afterwards bought the interest of Ferguson therein, under an order of sale from the Probate Court, and took possession of the stable and premises as he found them; that the stable was built on the south and west walls of the old theatre foundation, and that there was then immediately adjoining the stable in the rear an old shed, which he supposed had belonged to Ferguson, and in which he afterwards put horses, buggies, &c. On March 29, 1842, he took a lease from the Lindells of the stable lot, describing it as fifty feet in front by one hundred and twenty-eight feet in depth to the centre of the block, and that prior to that date he had no lease, but was holding possession under Mrs. Ferguson; that after he had got his lease from the Lindells and was about extending his stables over the ground in controversy, the plaintiff Schultz came to him and complained that he was getting upon his ground, and thereupon (some time in 1842 or '43) he took a lease from Schultz of what he claimed, and continued to pay him rent until 1849, when he sold out to the Arnots and turned over the possession to them.

The Arnots at first refused to pay rent to Schultz until

he had taken out a landlord's warrant and got judgment for possession, when they, on the 21st day of November, 1851, took a lease of that date from Schultz for the term of three years of the same premises which had been before rented and occupied by O'Blenis. In October, 1855, by writing "endorsed" upon the lease, they gave the plaintiff the privilege of inserting the beams of a new building he was erecting on his lot into the brick walls of their stable, extending over on the leased premises; but after the expiration of the lease they refused to pay rent any longer, or to take a new lease, and thereupon this suit was brought against them. At a subsequent term the Lindells came in and were made co-defendants, as landlords.

The answer set up the statute of limitations as a defence, and the issue was, which party had the earliest possession, and whether or not the leasing by O'Blenis of the plaintiff was an attornment of Lindell's tenant in possession to the plaintiff, a stranger.

At the request of the plaintiff, the court gave the following instructions:

1. If the jury believe, from the evidence, that James J. Purdy, as far as the year 1823, had the actual possession of so much of the premises sued for as lies to the southward of the old theatre south wall, that that possession passed from said Purdy to O'Brien, and from O'Brien to the plaintiff Schultz, and from him to Robert McO'Blenis, as his tenant, under lease from him, and from said R. McO'Blenis, or the plaintiff, to the defendants, Anderson and Jesse Arnot, and that they withheld the possession of said premises from the plaintiff at the commencement of this suit, they will find for the plaintiff for said premises, and assess the damages at what they believe, from the evidence, has been the annual value of said premises from the date of the expiration of the lease given in evidence by the plaintiff, dated the twenty-first day of November, 1851, to the present time, and they will also assess the monthly value of said premises at the present time.

2. If the jury believe, from the evidence, that the plaintiff, by himself or tenants, had the visible, notorious, continued and actual adverse possession of so much of the premises sued for as lies to the southward of the old theatre south wall for the period of ten years next before the commencement of this suit, they will find for the plaintiff.

3. And the jury are further instructed, that, if they believe, from the evidence, that said defendants, Anderson and Jesse Arnot, executed the lease given in evidence by the plaintiff, dated the 21st day of November, 1851, and received possession of the said premises from the plaintiff under said lease, and that from the date of the expiration of said lease down to the commencement of this suit said Arnots withheld the possession thereof from the plaintiff, claiming to hold the same under their co-defendants in this suit, as landlords, then such possession of said Arnots is to be considered as the possession of the plaintiff within the meaning of the foregoing instruction. If the jury find for the plaintiff under the instructions given, they will name in their verdict for what part of the premises sued for they so find.

4. The jury are instructed that the sheriff's deed, dated the 10th July, 1824, from John Simonds, sheriff, to Peter and Jesse G. Lindell, given in evidence by the defendants, conveyed title to no more land to said Lindells than the said Thomas Hempstead and Christopher M. Price, or either, then owned at the date of said deed, and gave the Lindells no legal seizin or possession by title beyond the extent of the ground then owned as aforesaid by said Hempstead and Price.

The following instructions, asked by plaintiff, were refused:

5. If the jury believe, from the evidence, that the plaintiff, by himself or his tenants, had the visible, notorious, continued and actual adverse possession of a part of so much of the premises sued for as lies to the southward of the old theatre south wall, claiming the whole thereof, under color of title by deed, for the period of ten years next

before the commencement of this suit, they will find for the plaintiff.

6. And they are further instructed, that, if they believe from the evidence that said defendants, Anderson and Jesse Arnot, executed the lease given in evidence by the plaintiff, dated the 21st day of November, 1851, and received possession of said premises from the plaintiff, and that from the date of the expiration of said lease down to the commencement of this suit, said Arnots withheld the possession thereof from the plaintiff, claiming to hold the same under their co-defendants in this suit, as landlords, then such possession of said Arnots is to be considered as the possession of the plaintiff within the meaning of the foregoing instruction.

The following instructions were given for the defendants:

1. If the jury find, from the evidence, that after O'Blenis became the tenant of the Lindells, he was induced, by representations of Schultz, that he was the owner of the premises sued for, to pay rent to him for a part of the lot in question, when in truth and in fact said Schultz had no title thereto, and was not the owner of the same, then such payment of rent by O'Blenis to Schultz for said part of said lot does not in anywise estop the said defendants from denying the title of said Schultz to the premises sued for.

2. And after the said Arnots became tenants of the Lindells under O'Blenis, if they were induced by representations of Schultz that he was the owner of the premises sued for, to pay rent to him, or to accept a lease from him for part of said lot, and pay him rent therefor, when in truth and in fact said Schultz had no title thereto, and was not the owner of the same, then such payment of rent and execution of a lease do not in any way estop the defendants from denying the title of said Schultz to the premises sued for.

3. And if the jury find that the said rent was paid by O'Blenis and by Arnots to Schultz, and if said lease was procured to be executed by said Arnots to Schultz by reason of the representations of Schultz that he was the owner of the premises, when in fact he was not the owner thereof, and

that said O'Blenis and Arnots were at said times the tenants of the Lindells in said premises, then, unless the plaintiff has shown a title to said premises under the deeds given in evidence in this case, he cannot recover in this action, and the jury will find for the defendants, unless they find that the plaintiff has had such visible, actual and notorious possession as is pointed out in instructions No. 1 and 3 given for the plaintiff.

4. If the jury find, from the evidence, that Peter and Jesse G. Lindell, in person or by their tenants, have had and held open, notorious, adverse and continuous possession of the premises in question for twenty years next before the commencement of this suit, the plaintiff cannot recover. And as to what is adverse possession, the jury is instructed, that, if the said Lindells, in person or by their tenants, had and held possession of a part of said lot, claiming the whole by deed, then by construction of law they had possession of the whole lot, unless some person was in the actual possession of any vacant part of the same.

5. The payment of rent by O'Blenis or by Arnot to Schultz, under representations by Schultz that he was the owner, when in fact he was not the owner, if at said times the said O'Blenis and said Arnots were the tenants of the Lindells, would not, in any manner, affect the defence of twenty years' adverse possession, as stated in the preceding part of this instruction.

6. If the jury find, from the evidence, that James J. Purdy ever had possession of the lot on the alley in the rear of the theatre lot, by permission of Charles S. Hempstead, and held the same under the said Hempstead, possession of said Purdy was the possession of said Hempstead and those claiming under him, and the said Lindells can add the possession of said Purdy under the said Hempstead to his own possession and the possession of their tenants, Ferguson, O'Blenis and the Arnots; and if the jury believe, from the evidence, that Charles Hempstead, the Lindells and their tenants, have had and held open, notorious, adverse and

continuous possession of the premises in question for twenty
years before this suit, claiming the same as their own by deed,
then the jury should find a verdict for the defendants.

*N. Holmes*, for appellant.

I. Angell on Lim. 398 : It is clear that the party showing
the prior possession (in a case like this) is entitled to re-
cover.   (Ib. 431.)

II. The language of the statute, which says, " the attorn-
ment of a tenant to a stranger shall be void, and shall not in
anywise affect the possession of his landlord," presupposes
that the landlord has a possession to be thus affected.   (R.
C. 1855, p. 1013, § 15.)

III. The lease was of no effect to make O'Blenis " the
tenant of the Lindells " beyond the actual possession which
they had of the theatre lot at the date of the lease.   (Tay.
Land. & Tent. § 84–5.)   A landlord out of possession cannot
make an effective lease until he get the possession.   (Griffith
v. Schwendermann, 27 Mo. 412–15.)   A party cannot con-
nect a parcel that has been occupied for twenty years with
one that has not, and protect them both under the statute
of limitations.

*Hill & Burwell*, for respondents.

I. The tenant cannot dispute his landlord's title. (See Ad.
on Eject. 276, and cases cited in notes; Tay. Land. & Ten.
§ 436 ; 2 Bibb. 432.)   It seems to follow that he cannot, by
his own act, destroy it or dispossess him, for that would be
to say that he is not in under his landlord, but adversely to
him.   This not even pretended in this case. (See Parker v.
Raymond, 14 Mo. 535 ; Blue et al. v. Sayre, 2 Dana, 213.)
To state the case seems to me to be sufficient to vindicate
the decision of the court.   The wrongful or mistaken attorn-
ment of my tenant to another does not affect me ; he is still
in possession under me and for me.   (See Ad. on Eject.
276, and notes.)

II. A lessee, during his occupation, holds both by privity of estate and of contract. (Tay. Land. & Ten. § 436.) If a lessee is in possession at the time of making the lease, he will be deemed to have the right of possession as to all persons holding under him; but without the actual possession, he cannot make a valid lease, for a bare right of entry is but a right of action, and not assignable. (Tay. § 84.)

III. The fraudulent attornment of the Arnots to Schultz cannot affect the rights of the Lindells, their landlords. By the statute, (R. C. 1855, tit. Eject. § 5,) the Lindells are made parties to the suit, as landlords and owners in fee, and come in to defend their right of possession to this lot of land, leased by them to the Arnots. The possession of the tenants, the Arnots, is, and always has been ever since their entry, the possession of their landlords, the Lindells.

BATES, Judge, delivered the opinion of the court.

Of course we do not examine the evidence further than to see that it warranted the giving or refusal of instructions, as the points made are upon the instructions.

Four instructions, very favorable to the plaintiff, were given at his instance, and three instructions, very favorable to the defendants, were given at their instance. Taken together, they put the case very favorably before the jury; and although some of those given for the defendants may be subject to verbal criticism, yet there is no error in them which can be said to have injured the plaintiff.

The fifth instruction asked by the plaintiff was properly refused, because there was no evidence that the plaintiff had any color of title beyond the limits described in the deeds under which he claimed title.

Affirmed. The other judges concur.